ALBAN ET AL., APPELLANTS, *v.* R. K. CO. ET AL., APPELLEES.

[Cite as Alban v. R. K. Co., 10 Ohio App. 2d 205.]

(No. 8603—Decided June 6, 1967.)

*Mr. L. DeWitt Agler* and *Messrs. Cunningham, Burns & Gibbs,* for appellants.
*Messrs. Chamblin, Snyder & Henry,* for appellees.

TROOP, J. Plaintiffs, appellants herein, Charles E. and Alice J. Alban, began an action in the Common Pleas Court of Franklin County claiming certain title to, or interest in, a right-of-way identified in an early plat as Cambridge Place Avenue and in a more recently recorded plat as Cambridge Boulevard. Several defendants are named in the action, but the controversial issue concerns primarily the defendant R. K. Co., a corporation. The premises owned by the plaintiffs and R. K. Co., as well as the disputed right-of-way, are located in the municipality of Marble Cliff. Plaintiffs not only seek a determination of their property rights but pray for other relief including a restraining order directed to the defendant R. K. Co.

An amended answer filed on behalf of the defendants R. K. Co., and Clayton Investment, Inc., claiming ownership of a portion of the tract involved, makes certain formal admissions, interposes a general denial, and asserts that the grant of a right-of-way to the plaintiffs was general in character and that

plaintiffs have ingress and egress over a driveway 12 feet in width, which they continuously use. Allegations in the answer are somewhat detailed, but the noted defenses bring into focus the sharply controverted issue which is sufficient for this discussion.

Trial was had to the court, at the close of which judgment was entered for the defendants upon the plaintiffs' amended petition. A motion for a new trial was overruled. It is from the judgment and final order that this appeal is taken. Reference in this discussion is to plaintiffs, the Albans, and the defendants, the two corporations, the principal contenders in the litigation.

Background setting for the case is found in the documents entered as exhibits during the trial of the case. Basic to an understanding of the developments in the case, and providing the starting history of the existing parcels of land, is a plat called "Country Club Addition," recorded in 1903 in Plat Book 6, page 15 B, Recorder's Office, Franklin County, Ohio, plaintiffs' Exhibit 14. It shows a dedicated street, or roadway, running essentially north and south, turning to the east some 385 feet from the north line of the platted lots, and located between lots numbered 13, 14, 15, and 16, on the east side of the roadway, and lots numbered 10, 11, and 12, on the west side of the roadway.

It appears to be established that the roadway, 80 feet wide, shown in the above-described plat, was vacated by action of the county commissioners in 1906. It seems agreed also that title to the entire area, lots 10 through 16 and the now vacated roadway, was in Carl Lindenberg as of September 4, 1903. That is supported by plaintiffs' Exhibit 1, a deed dated September 25, 1937, from C. Frances Lindenberg to W. Lyman Case, conveying the entire area and other premises. The description in the deed refers to lands known as "Country Club Subdivision," and the plat in Plat Book 6, page 15 B, and uses parcel number designations. Parcel I, described by metes and bounds, recites the inclusion of lots numbers 13, 14, 15, and 16, plus part of the vacated roadway. Parcel II covers the west one-half of the vacated roadway, and Parcel III, lots numbers 10, 11, and 12.

The land transferred from Lindenberg to Case was in turn

transferred by Case to Earl W. Lamneck, by deed dated September 25, 1937, plaintiffs' Exhibit 2. Lamneck becomes the common owner of all the real estate necessary to be considered in resolving the controversy giving rise to the lawsuit here reviewed.

Some ten years after Lamneck acquired title, parcels of land, all being parts of Parcel I as described above, were deeded by Lamneck and his spouse to Charles Edward and Louise Hotchkiss—deed dated July 19, 1946, plaintiffs' Exhibit 6, to Elmer J. and Esther Boer—deed dated August 8, 1950, plaintiffs' Exhibit 3, to Louis G. and Miriam J. Gross—deed dated July 10, 1951, plaintiffs' Exhibit 12, and to Frank E. and Margaret E. Rader—deed dated August 11, 1951, plaintiffs' Exhibit 13. It is recalled that Parcel I included the old lots 13 through 16, all of which are located east of the old dedicated roadway, 80 feet wide and now vacated, shown on the plat of "Country Club Addition." It is noted particularly that all the deeds as set out —Lamneck to Hotchkiss, Boer, Gross, and Rader—carry provision for a right-of-way described by metes and bounds as an addition to the parcel of land conveyed. The language is identical in the case of each deed and reads as follows:

"Also a Right of Way on and over the following described property:

"Situate in the state of Ohio, county of Franklin and in the village of Marble Cliff and being in Section 11, Township 1, Range 23, Congress Lands, and being part of Parcel No. 1 and Parcel No. 2 as described in the deed of W. Lyman Case and Margaret B. Case, his wife, to Earl L. Lamneck, as the same is shown of record in Deed Book 1072, page 127, Recorder's Office, Franklin County, Ohio, and being more particularly described as follows:

"Beginning at a point in the north line of Parcel No. 1, above mentioned, at its intersection with the east line of Cambridge Boulevard; thence southerly, with the east line of Cambridge Boulevard produced, 305 ft. to a point; thence westerly, parallel with the north line of Parcels Nos. 1 and 2, above mentioned, 80 ft. to a point in the west line of Cambridge Boulevard extended southerly; thence with said west line extended, northerly 305 ft. to its intersection with the north line of Parcel No. 2,

above mentioned; thence with said north line and along the north line of Parcel No. 1, above mentioned, easterly 80 ft. to the place of beginning, containing 0.56 acres."

A series of deeds effecting transfers of lots of land, all a part of Parcel I and all located on the east side of the vacated roadway and the presently existing easement or right-of-way, 80 feet by 305 feet, accomplished ownership finally in the plaintiffs herein. These deeds are Hotchkiss to Boer—dated September 25, 1947, plaintiffs' Exhibit 7, Boer to Bernard C. and Dorothy S. Jaeger—dated April 15, 1953, plaintiffs' Exhibit 8, Jaeger to William O. Queen—dated August 29, 1955, plaintiffs' Exhibit 9, and dated October 8, 1956, plaintiffs' Exhibit 4, and Queen to the plaintiffs—two deeds, dated July 21, 1963, plaintiffs' Exhibits 5 and 10.

All the deeds in the foregoing paragraph carry the easement, described by metes and bounds, 80 feet by 305 feet, as set out above, as contained in the Lamneck deeds to Hotchkiss, Boer, Gross, and Rader.

So much for the property abutting the 80-foot by 305-foot easement on the east side. The history of the premises now owned by R. K. Co. is much shorter. After Lamneck deeded lots 13 through 16, or Parcel I, to Hotchkiss, Boer, Gross, and Rader, 1946 through 1951, and reserved the 80-foot by 305-foot right-of-way, he made a conveyance to R. K. Co., by deed dated October  , 1955, plaintiffs' Exhibit 11. The description covering the real estate transferred is voluminous. It follows substantially the description used in the deed to Lamneck from Case and sets out Parcel I as covering lots 13 through 16, Parcel II being the west half of the former road and Parcel III, lots 10, 11, and 12, along with other property. It could be said to be something of a blanket coverage.

The comprehensive description employed in the deed is not so important to this discussion as are the exceptions following it. The language is, "Excepting from said Parcels I and II the following tracts of land conveyed by Earl W. and Lucille W. Lamneck, husband and wife, as indicated [.]" Then follow parcels (a) through (d) showing a transfer of a parcel 80 feet by 191.3 feet to Hotchkiss and the transfer of three parcels 75 feet by 191.3 feet to Boer, Gross, and Rader. In each of the brief

descriptions of the exceptions, following the footage as set out, is the language, "plus right of way over Cambridge Boulevard, produced, 305 feet by 80 feet (.56 acres) conveyed to," etc. These exceptions, metes and bounds and right-of-way, cover the premises in deeds previously mentioned as going to predecessors in title to the present owners, the plaintiffs, Gross, and Cosentino.

Concluding the full description in the deed to R. K. Co. is this statement:

"This conveyance is subject, however, to valid restrictions and valid restrictive covenants, and easements, if any, of record pertaining to said real estate."

To complete the essential fact pattern, attention moves to plaintiffs' Exhibit 18, which is a copy of the recorded plat of "Cambridge Park Village." It can be found in Plat Book 37, page 17, and was recorded June 19, 1964. It shows the lands of Gross, Cosentino, and Alban on the east side of Cambridge Boulevard, and the lands of R. K. Co. on the west. Significantly, Cambridge Boulevard is shown as 80.02 feet wide at the north line of the Gross and R. K. Co. lots, at which point it begins to narrow to 50 feet at a point somewhere near the north line of the Cosentino lot, and continues at 50 feet in width swinging to the west, in contrast to the vacated route on the old plat. In this new plat an area 20 feet wide is shown abutting plaintiffs' premises on the west, running from their south line to the curve in Cambridge Boulevard, and identified as Reserve "B."

Obviously, the newly recorded plat invited the present action because the projected "Cambridge Boulevard," 50 feet in width, and Reserve "A" and "B" as platted do not conform to and respect the contour of the old "Cambridge Place Ave.," which though vacated is reflected in the private easement as provided in the deeds to owners abutting the 80-foot by 305-foot parcel on the east and specifically excepted from the premises transferred to the defendant abutting on the west, as shown in the deed dated October——, 1955, from Lamneck to R. K. Co.

The trial court denied the plaintiffs the relief sought. In its decision, dated August 25, 1966, the court says:

"When no dimensions, nor purposes, are expressed. the ex-

tent and nature of the right of way may be inferred from the terms of the grant, interpreted in the light of surrounding facts and circumstances.''

The court says also:

"* * * the court finds the purpose of the right of way was for ingress and egress. * * * said grant does not operate to pass a right to the unobstructed use of the entire premises described.''

That squarely is the issue to be decided. What was the extent of the right-of-way or easement as provided in the instruments reviewed? The trial court concluded that there were "no dimensions,'' that the nature of the right-of-way must be "interpreted in the light of surrounding facts and circumstances,'' and that the purpose of the right-of-way was "for ingress and egress.'' These conclusions must be examined in the light of applicable law.

Case law in Ohio is limited, and resort, therefore, is to the general works. It is emphasized that the easement in the instant case is not one of necessity, nor one created by inference, but it is one created by formal conveyance. This easement comes into being by deeds containing a specific grant to the plaintiffs and their predecessors, and to others, presently owning lots of land on the east side of the roadway, and further identified and reserved to these plaintiffs, and others, in a formal conveyance to the defendants. These formal conveyances specifically establish, by dimensions, a tract of land 80 feet by 305 feet, as granted and reserved as a right-of-way on and over the described property.

Some general propositions of law require reiteration. 25 American Jurisprudence 2d 472, Section 64, suggests a basic rule, as follows:

"The grant of an easement will, of course, control its location if specified therein.''

28 Corpus Juris Secundum 756, Section 77, adds a rule and possible exceptions, as follows:

"Where the grant or reservation of a right of way definitely fixes its width, the terms of the instrument are, of course, controlling. If the grant or reservation assumes to fix its width but is ambiguous or otherwise indefinite, the determination of

the width depends upon a proper construction of the language of the instrument. * * * ''

18 Ohio Jurisprudence 2d 582, Section 46, points out a general rule as follows:

''The general rule is that the location of a private way is to be determined from the terms of the instrument creating it. The location and extent of an easement may be determined by a plat which was referred to when the easement was created. * * *''

Reference is to 2 Thompson on Real Property (1961), beginning at page 567, Sections 387, 388, which contains several different statements of the general rule and, sometimes accompanying the general rule, as if in contrast, a possible exception. Some examples, as follows:

Page 567. ''Where the easement is a private way, it must have a particular definite line. It must have a definite location on the ground, which must have a definite width, definite termini and definite intermediate points to indicate its direction. * * *'' Followed by an exception, ''Where an easement is granted, but not defined, the privilege must be a reasonable one * * * ''

Pages 567 and 568. ''* * * Thus a grant of the use of an alley already laid out is a grant of the use of it for its whole extent as it existed at the time of the grant. This includes 'the last inch as well as the first inch.' * * *

''* * * A right-of-way defined in width and with fixed limits cannot be changed without the consent of the owner of the right. * * *''

Page 569. ''* * * When the width of the way has been established by * * *, or the width of the way is definitely fixed by the grant or reservation creating the same, * * * the use of the way may be commensurate with the entire width thereof. * * *''

Page 570. ''In case the width of a right-of-way is not specified in the grant,'' then the way must be reasonable, safe, and convenient.

Page 573. ''After a way has been located, it cannot thereafter be changed without the consent of both parties; but the way may be changed thereafter either by express agreement or by acquiescence in the change, * * *.''

Page 577. "* * * Likewise where the way public or private arises by grant the description in the grant if sufficient controls." And then follows: "If the bounds of a way are not located by the deed which creates it, the parties may, by agreement, use, or by acquiescence fix the location upon the servient premises. * * *"

Finally, at page 580, the following:

"* * * However, after a way has once been fixed by parties capable of making such a determination, a court of equity may not thereafter, upon application of one of the parties or his successors, change the way. * * *"

There is an endless volume of case and text book law dealing with easements, and the position of the owners of dominant and servient estates, which produces possible support for different points of view, but the general rule that emerges is that a formal conveyance defining specifically the location of the easement is controlling. A multitude of cases deal with situations in which the easement is not located or in which there is no formal grant but merely an easment by inference or necessity, or one of limited use.

An examination of some of the cases cited to support defendants' position in the instant case suggests some interesting influencing factors. *Le Sawyer* v. *Squillace* (1961), 14 App. Div. 2d 961, 221 N. Y. Supp. 2d 455, involves an easement for use of the land, "not specifically defined," for ingress and egress. A garage had been built on a part of the 20.5-foot by 43-foot area, and the court held an unobstructed 12-foot right of way was sufficient. *Johnson* v. *Kinnicutt* (1848), 58 Mass. (2 Cush.) 153, uses the language "passing and repassing" over a space of 20 feet. Bales and boxes were placed on the strip, and the court held there was still room to pass and repass.

*Short* v. *Devine* (1888), 146 Mass. 119, 15 N. E. 148, involved farm lands, *Grafton* v. *Moir* (1892), 130 N. Y. 465, 29 N. E. 974, a carriage alleyway, and *Hyland* v. *Fonda* (1957), 44 N. J. Super. 180, 129 A. 2d 899, again, the right of ingress and egress. Each of these cases involves peculiar and unusual situations, most suggest an easement not clearly defined.

Counsel for defendant also cite and rely upon *In re City of Buffalo* (1910), 65 Misc. 636, 120 N. Y. Supp. 611, which should

be examined more closely. The easement as described was "subject to a road or right of way for the use of J. Frick * * * being a strip of land 62-½ links wide bounding on the easterly line of said lot No. 11." The court construed the language of the easement "as designating a strip over which the right of way may be enjoyed and not as specifying the width of the right of way." In establishing a 25-foot right-of-way the court found the remaining 16 feet was never recognized as a private way, and the right to it thus abandoned and the plaintiff estopped. The general propositions of law advanced by the court deserve particular attention. They are as follows:

At page 640. "In determining the width of a way, a grant will be construed with reference to the place in which the way is granted and the circumstances under which the grant was made. Thus, where a way is granted *over* a piece of land of a certain stated width, it will depend upon the circumstances of the case whether the reference is to the width of the way, or is merely descriptive of the property over which the grantee may have such a way, as may be reasonably necessary. * * *"

At page 640. "* * * in construing such instruments, the court will look to the circumstances attending the transaction, the situation of the parties and the state of the thing granted, to ascertain the intention of the parties. In cases of doubt, the grant must be taken most strongly against the grantor. * * *"

At page 641, the court concedes that:

"It may be true, as a general proposition, that, where a right of way of a specified width is created by grant, the grantee is entitled to enjoy the full width. * * * "

The trial court relied upon *Long* v. *Gill* (1885), 80 Ala. 408, in support of its decision. Again the characteristic is peculiar circumstances. A small brick building had been constructed upon an area 30 feet by 28 feet plus a 10-foot alley. The court held (page 409) the right-of-way to be over the parcel of land without defining its limits, saying "The description was not intended to define the limits of the right of way, but to designate the place, where it was to be reasonably enjoyed." Such a conclusion is justified, particularly when it is noted that there was acquiescence in a similar obstruction for several years.

Before examining two cases seeming to come more closely

to the instant case, we note that the easement language is as to a right-of-way ''on and over'' the 80 feet by 305 feet described. An Ohio case, *Lyon* v. *Fels* (1901), 8 N. P. 450, 11 O. D. 706, quotes the grant language, as follows, ''also the full and entire right of way in, over, and upon a certain private alley twelve feet wide,'' and holds ''that the grantor or those claiming under him have no right to erect a gate, or gates, at the entrance of the way, or to narrow the passage by gate posts.''

An old, and classic, case is *Tudor Ice Co.* v. *Cunningham* (1864), 90 Mass. (8 Allen) 139. The holding of the court is as follows:

''A grant of a right of way, with horses, carts and other vehicles, 'to a street forty feet wide, and in, over and through said forty feet street,' which street is owned by the grantor, and has been laid out by him between his lots, and is so situated that there will be much passing over the same, gives a right of way in the entire space of that width; and the grantee may maintain an action for damages, if the grantor or those claiming under him afterwards obstruct his convenient use and enjoyment of any part thereof.''

Particularly significant clauses, in the language of the court, at page 140, are as follows:

''This case is free from all doubt. * * * The nature and extent of this right are fully described in the deed under which the plaintiffs claim. * * * A right in the entire space of that width, * * *''

In the case before us the dimensions of the easement are unequivocally clear, 80 feet wide, 305 feet long, repeated many times in both grants and reservations. If there were an ambiguity, and there is none, or if the intent of the parties as to the purpose of the easement is in doubt, then reference to the history of the area can be used to clarify. The fact that there had been a dedicated street in 1903 is significant. The quotation from 18 Ohio Jurisprudence 2d 582, Section 46, *supra*, suggests:

'' * * * The location and extent of an easement may be determined by a plat which was referred to when the easement was created.* * *''

The plat of the ''Country Club Addition'' is referred to repeatedly in the deeds to the feeholders on the east side of the

right-of-way from 1937 to 1955 and also in the deed conveying land abutting on the west in 1955, and the same easement is more recently mentioned in conveyances as of the same dimensions and as an extension of Cambridge Boulevard. Cambridge Boulevard is also shown on the newer plat recorded in 1964. If intention must be proved, respect for and reference to the 80 feet by 305 feet, specifically described and mentioned and shown as an extension of Cambridge Boulevard, in conveyances covering a period of sixty years establish it.

People who bought and paid for a building site together with an easement, an agreed to and projected roadway, ten years before defendant corporation acquired any interest whatever in the area, cannot be said to have intended anything other than an open and unobstructed right-of-way of the dimensions clearly established.

28 Corpus Juris Secundum 756, Section 77 (3) (a), says: "* * * a grant will be construed with reference to the place in which the way is granted and the circumstances under which the grant was made. * * *"

The place in the instant case is most significant. There had been a dedicated street. The intention to preserve that area, open and unobstructed, as a proper approach to premises designed for building sites and subsequently deeded with the reserve as a private right-of-way included, is established by the conduct of parties for over sixty years. (With respect to reference to a plat, see, also, *Lowe* v. *Redgate* [1884], 42 Ohio St. 329.)

A decision by the Court of Appeals for Summit County, *Hollosy* v. *Gershkowitz* (1950), 88 Ohio App. 198, is noted in conclusion because of several emphases. The easement under scrutiny in *Hollosy* was created by specific grant and by reservation. Pronouncements by the court are as follows:

At page 201. "It is also established in the law that the process which creates an easement also fixes its extent. The extent of an easement created by prescription, for instance, is fixed by the use which created it. Likewise, the extent of an easement created by conveyance, as shown in the instant case, is fixed by the conveyance itself."

At page 202. "* * * it is established that a definite loca-

tion of a valid easement over land, determines and limits the right of the grantee, as well as the rights of the owner of the servient estate, and that those rights of the grantee cannot be changed except by common consent. Among the reasons given for the rule is that, treating the location as variable would incite litigation, depreciate the value of the land, and discourage its improvement.''

The plaintiffs herein have a right and interest in an easement of specified dimensions, 80 feet by 305 feet, as of Cambridge Boulevard projected, the purpose being established by the intention of the parties to the series of grants and reservations made in the documents providing the history of the changes of ownership prior to that of the parties hereto.

We find the trial court in error in its application of the law in the instant case, and the judgment from which appeal was taken is reversed and the cause remanded with the direction to sustain the plaintiffs' prayer for a determination of their property rights to be an unobstructed right on and over 80 feet by 305 feet as indicted herein, and for such other order as may be appropriate to law and the order of this court.

*Judgment reversed and cause remanded.*

DUFFY and HERBERT, JJ., concur.